IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUTUAL SECURITIES, INC.; AARON JASPER; MITCHELL VOSS; RYAN SABOL; NICHOLAS DAMIANI; and JULIE COHEN,<br><br>Petitioners,<br><br>v.<br><br>VINCENT F. GILOTTI and MARY LOU GILOTTI<br><br>Respondents. | CIVIL ACTION<br><br>NO. 21-5031 |

<u>MEMORANDUM RE: PLAINTIFFS' AMENDED PETITION TO VACATE ARBITRATION AWARD</u>

**Baylson, J.**                                                                                    February 1, 2023

I.   SUMMARY OF ALLEGED FACTS, CLAIMS, AND BRIEFING

A.   **Background Facts**

Plaintiffs Mutual Securities Inc., Aaron Jasper, Mitchell Voss, Ryan Sabol, Nicholas Damiani, and Julie Cohen (together, "Mutual") operate a brokerage firm, of which Aaron Jasper, Mitchell Voss, Ryan Sabol, Nicholas Damiani, and Julie Cohen are employees. Mutual brings a Complaint (better termed a "Petition to Vacate an Arbitration Award," to be consistent with the Federal Arbitration Act), stemming from a dispute with Defendants Vincent and Mary Lou Gilotti ("the Gilottis"). Mutual and the Gilottis entered into an agreement concerning investments and containing a mandatory arbitration clause. Am. Pet. (ECF 4) ¶ 13. Later, the Gilottis filed an arbitration demand with the Financial Industry Regulatory Authority ("FINRA") in Philadelphia to address their claims against Mutual. <u>Id.</u> In response to the Gilottis' demand for arbitration, Mutual "including the individual employees named as parties in this case" filed answers and a counterclaim, and sought fees and costs that would be incurred to seek expungement of these

1

charges from their brokerage records. Id. at ¶ 14. No party sought a ruling specifically on whether expungement should or should not be allowed. Id. at ¶¶ 14-15.

### B.  Arbitration Hearing Procedure

At the Arbitration Hearing, the arbitration panel ("the Panel") found in the Gilottis' favor, and awarded the Gilottis attorneys' fees and costs, which Mutual promptly paid. Am. Pet. ¶¶ 19, 21. Additionally, without request from the Gilottis, the Panel explicitly denied expungements for Aaron Jasper, Mitchell Voss, and Ryan Sabol. Orig. Compl. ¶ 17. By contrast, the Panel granted expungement for Plaintiff Nicholas Damiani, as well as Damiani's fees and costs on his counterclaim and sanctions against the Gilottis for including Damiani in the arbitration. Id. at ¶ 22; Am. Pet. Ex. 5 (ECF 4-6) at 5.

After the Arbitration Hearing, and after some confusion regarding payments, the Panel issued an order ("the Order") denying Mutual's request to vacate the denial of expungement for Plaintiffs Jasper, Voss, and Sabol because "none of the criteria necessary to find expungement should be granted are applicable to these [Plaintiffs]." Id. at ¶¶ 21-22.

### C.  Subsequent Procedural History

Mutual filed this Complaint, or "Petition to Vacate the Arbitration Award" on November 15, 2021 ("the Original Petition"). Orig. Pet. (ECF 1). Summons were served on the Gilottis through their counsel. Summons (ECF 7). The Gilottis did not enter an appearance and no answer was filed. On December 22, 2021, Mutual filed an Amended Complaint, or "Amended Petition to Vacate the Arbitration Award" ("the Amended Petition"). Am. Pet. (ECF 4). Again, no answer was filed. On November 3, 2022, Mutual filed a Notice of Non-Opposition, requesting that its Petition be considered under the same standard as an unopposed Motion for Summary Judgment.

Notice (ECF 9).  Mutual seeks relief on a single issue: vacating the portion of the Award that denied expungement to Plaintiffs Jasper, Voss, and Sabol.  Am. Pet. ¶ 18c.

Mutual argued that the Panel exceeded its authority by ruling on "the unsubmitted issue of expungement."  Id. at ¶ 25.  Mutual argued that the Panel's authority was derived from the agreement to arbitrate and the issues that the parties submitted.  Id. at ¶¶ 27-28.  Because neither party requested expungement, only fees and costs related to expungement, Mutual argued that the Panel exceeded its powers.  Id. at ¶¶ 20-44.

    **D.**  **This Court's Initial Concerns About the Petition to Vacate**

On December 14, 2022, this Court requested that Mutual file supplemental briefing, raising a number of concerns about granting the Petition to Vacate.  Dec. 14, 2022 Order and Memorandum (ECF 10 and 11).  Specifically, the Court raised concerns that Mutual had not satisfied the "extremely deferential" standard of review for vacating arbitration awards. Memorandum (ECF 10) at 4, citing Oxford Health Plans, LLC v. Sutter, 569 U.S. 564, 569 (2013). This Court queried whether Mutual's own request for "such other relief" to which it was entitled opened the door for the Panel to properly rule on the question of expungement.  Id. at 5.  This Court also asked whether the Panel's apparently correct ruling granting expungement for one party implied that it had done a similarly appropriate analysis for the parties now seeking to vacate the denial of expungement.  Id. at 5 n.1.  Finally, this Court raised the concern that a ruling on the issue would obligate FINRA to grant expungement without providing FINRA with any notice or opportunity to weigh in ono the issue.  Order (ECF 11).

    **E.**  **Summary of Mutual's Supplemental Briefing**

Mutual replies to all concerns raised in the December 14, 2022 Memorandum and Order. Mutua Supp. Brief (ECF 12).  First, Mutual explains that FINRA does not need to be added as a

3

party to this case because Mutual is not asking this court to grant expungement. Id. at 1-2. Mutual acknowledges that, if it were asking this Court for an order granting expungement, then FINRA would need to be a party to that action. Id. However, Mutual explains that it is merely asking the Court to vacate the Order denying expungement, presumably so that Mutual can later seek expungement in a separate proceeding as laid out in the FINRA Rules. Id. Mutual then argues that a request for relief does not impliedly ask for a denial of relief, and so the Panel exceeded its authority in denying expungement. Id. at 2. Finally, Mutual argues that the Panel disregarded the law and FINRA rules when it denied expungement without holding a hearing on the matter. Id. at 2-4. Mutual points out that the Panel did not hear any evidence or arguments in support of expungement and that in failing to hold a hearing on the matter, the Panel violated the FINRA rules. Id. at 3.

## II.   STANDARD OF REVIEW

"A petition to confirm an arbitration award under the FAA is a motion, not a pleading. CPR Management, S.A. v. Devon Park Bioventures, L.P., 19 F.4th 236, 243 (3d Cir. 2021). "[C]ourts should treat an unanswered petition to confirm as an unopposed motion for summary judgment." Intellisystem, LLC v. McHenry, 2019 WL 2715373, at *2 (E.D. Pa. June 26, 2019) (Surrick, J.); see also AAMCO Transmissions, LLC v. Winard, 2021 WL 2646887, at *1 (E.D. Pa. June 28, 2021) (Kenney, J.). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion" and may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled

to it." Fed. R. Civ. P. 56(e)(2)-(3).  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Courts must be extremely deferential to final arbitration awards and may only vacate them where an arbitrator's decision is so far outside the scope of his contractual authority that the decision fails to "draw its essence from the contract." Oxford Health Plans, LLC v. Sutter, 569 U.S. 564, 569 (2013) (interpreting the standard of review required to vacate class arbitration awards under the Federal Arbitration Act, 9 U.S.C. s10(a)(4)).  The FAA permits federal district courts to vacate arbitration decisions "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).  "A party seeking relief under that provision bears a heavy burden. . . . Only if the arbitrator act[s] outside the scope of his contractually delegated authority – issuing an award that simply reflect[s] [his] own notions of [economic] justice rather than draw[ing] its essence from the contract – may a court overturn his determination." Oxford Health Plans, LLC v. Sutter, 569 U.S. 564, 569 (2013) (citing Eastern Associated Coal Corp. v. United Mine Workers of America, Dist. 17, 531 U.S. 57, 62 (2000) (internal quotations omitted).

### III.    ANALYSIS

Mutual requests that this Court vacate the Panel's Order, arguing that the Panel exceeded their powers when it found that a request for expungement was implied in Mutual's request for fees and costs of subsequent expungement proceedings, and also exceeded its powers when the Panel subsequently denied expungement for Plaintiffs Jasper, Voss, and Sabol.  Am. Compl. ¶¶ 41-52.  A district court "must examine the form of the relief awarded to determine if it is rationally derived either from the agreement between the parties or from the parties' submissions

to the arbitrators, and second, the court must determine whether the terms of the relief are rational." Southco, Inc. v. Reell Precision Mfg. Corp., 556 F. Supp. 2d 505, 511 (E.D. Pa. 2008) (Joyner, J.).

### A.      Was the Order Rationally Derived from the Parties' Submissions?

In order to expunge information from the CRD system arising from disputes with customers, members or associated persons "must obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief."  FINRA Code of Arbitration Procedure Rule 2080(a).

Mutual argues that it did not have to seek expungement from the Panel, and that it was only seeking fees and costs for a separate expungement proceeding before an appropriate court.  Am. Pet. ¶¶ 39-41.  Mutual argues that because the specific customer agreement and arbitration agreement does not discuss expungement, the issue of expungement was not "before" the Panel and the thus the Panel's order on expungement was not derived from the contract at issue.  Am Pet. ¶¶ 32-36; Supp. Br at 2.

However, this ignores Mutual's own request that the Panel award it "such other relief at law or in equity to which they are entitled."  Am. Pet. Ex. 5 (ECF 4-6) at 4.  Mutual specifically requested "an order that [the Gelottis] must pay [Mutual's] attorneys' fees and costs spent expunging [the Gelottis'] claims from their CRD records; and such other relief at law or in equity to which they are entitled."  Id.  This last request for "other relief at law or in equity to which they are entitled" could easily be read in conjunction with their request for fees and costs to cover expungement, to include expungement itself.  The Panel had the authority under Rule 2080(a) to grant a request for expungement.  Mutual impliedly concedes that expungement was a form of relief which they were entitled to seek.  Am. Pet. ¶¶ 39-41.  The Panel's decision to deny expungement was therefore "rationally derived . . . from the parties' submissions to the

6

arbitrators," specifically Mutual's submitted request for "other relief at law or in equity to which they are entitled" and the fees and costs related to expungement.  Mutual provides no legal support for its argument that the Panel's power did not extend to denying relief that it may have been requested to grant.  Such an argument flies in the face of reason – Mutual asked for all relief to which they are entitled, which includes expungement, and so the Panel logically would have the power to decide whether to grant or deny such relief.  In spite of Mutual's argument to the contrary, this Court remains convinced that the Order denying expungement was rationally derived from Mutual's request for relief.

**B.     Was the Panel's Decision Rational?**

Assuming the request for expungement was a type of relief which Mutual sought, or could have sought, from the Panel, the analysis then turns to the question of whether the Panel's decision was rational.  "For an award to be 'completely irrational,' it is not enough that a court find that the arbitrators erred, but rather it must find that their decision indeed escaped the bounds of rationality."  Southco, Inc. v. Reell Precission Mfg. Corp., 556 F. Supp. 2d 505, 511 (E.D. Pa. 2008) (Joyner, J.).  Mutual argues that the Panel violated FINRA Rules when it failed to hold a hearing on the matter and did not provide the parties with an opportunity to present evidence or arguments on the matter.  Supp. Br. at 3.  However, Mutual does not address the very deferential "rationality" standard that this Court is obligated to apply.

1. Whether the Panel Was Required To Hold a Hearing

Under the FINRA Rules, "in order to grant expungement," the Panel must "[h]old a recorded hearing sessions (by telephone or in person) regarding the appropriateness of expungement.  This paragraph will apply to cases administered under Rule 12800 even if a customer did not request a hearing on the merits."  FINRA Code of Arbitration Procedure

7

Rule 12805(a). The plain language of the rule indicates that it only applies if the Panel seeks to grant expungement and does not necessarily apply to a denial of expungement. There is no rule explicitly requiring the Panel to hold a recorded hearing in order to deny Mutual's implied expungement request.

Some courts have read Rule 12805(a) expansively as applying to all expungement proceedings, not just expungement proceedings that result in granting expungement. See, e.g. Williams v. Tucker, 801 S.E. 273, 402-03 (W. Va. 2017) ("the Tuckers are assumed to have been advised of the implications of the expungement proceedings, i.e., that their claims would be substantively reviewed by a panel of FINRA arbitrators and affirmative findings of fact made in order to determine whether the circumstances met one of the grounds for expungement," implying that Rule 12805 applies to all expungement proceedings); Aiguier v. FINRA, 2017 WL 1311986, at *3 (Mass. Sup. Ct. Mar. 10, 2017) (presenting Rule 12805 as the rule "which set[s] out the manner in which an arbitration panel is to address matters of expungement that are brought before it"); In re Johnson (Summit Equities, Inc.), 864 N.Y.S.2d 873, 898-99 (N.Y. Sup. Ct. 2008) (suggesting that the purpose of Rule 12805 was to "ensure that arbitrators 'perform the critical fact-finding necessary' so that expungement relief was granted only in appropriate cases"); Sage, Rutty & Co., Inc. v. Salzberg, 2007 N.Y. Slip Op. 31406, at*4-5 (N.Y. Sup Ct 2007) (applying Rule 12805's predecessor, Rule 2130, and finding that "the arbitrators' decision on expungement [was] irrational because it was made without any evidentiary support" when the arbitrators had not held any hearing, no written settlement agreement was drafted, and no other documents were submitted.). There is logical support for this position – the second sentence of Rule 12805(a) states that the recorded hearing requirement "will apply to cases . . . even if a customer did not request a hearing on the merits." This suggests that when expungement is raised, the Panel should take it

upon itself to hold a hearing.  There is a certain logic to this – how would a panel be able to decide whether to grant or deny expungement without hearing the arguments and evidence?

However, the fact remains that there does not appear to be an explicit, written rule requiring the Panel to hold a hearing.  There is not enough case law to the contrary to find that the Panel acted irrationally on that point.  Furthermore, there is a rational justification for a more stringent reading of Rule 12805(a): if the panel is already hearing the merits of the underlying dispute, it would also have access to the facts applicable to an expungement analysis.  This Court is hesitant to issue a decision implying that FINRA must hold a hearing on all expungement proceedings when FINRA may wish to maintain the freedom and flexibility to do away with obviously frivolous or meritless motions for expungement without the expense of a hearing.  Furthermore, because there is a rational justification for this reading of Rule 12805(a), it cannot be definitively said that the Panel was irrational in that aspect of its decision.

1. <u>Whether the Panel Was Required to Allow Mutual to Present Evidence</u>

Mutual's also argues that the Panel did not hear evidence or arguments in support of expungement (in large part because the Panel did not hold a hearing).  Supp. Br. at 3.  Under the FINRA Rules, an arbitration panel must indicate which of the Rule 2080 grounds for expungement serves as the basis for the panel's expungement order.  The Panel determined that "none of these criteria necessary to find that expungement should be granted are applicable to" Mitchell Voss, Aaron Jasper, or Ryan Sabol.  Am. Pet. Ex. 4 (ECF 4-5) at 3.

The Panel did provide written explanation for why it was denying expungement for the three named Plaintiffs, citing to Rule 2080.  <u>Id.</u>  However, it does not appear, based on the record, that the Panel heard or pointed to any specific evidence it considered in denying expungement for those three plaintiffs.  Am. Pet. Ex. 4 (ECF 4-6) at 5.  By contrast, the Panel did specifically point

9

to testimony supporting its grant of expungement for Plaintiff Damiani. Id. at 5-7. At least one court has found that a ruling on expungement, unsupported by evidence, is irrational. Sage, Rutty & Co., Inc. v. Salzberg, 2007 N.Y. Slip Op. 31406, at*4-5 (N.Y. Sup Ct. 2007) (applying Rule 12805's predecessor, Rule 2130, and finding that "the arbitrators' decision on expungement [was] irrational because it was made without any evidentiary support" when the arbitrators had not held any hearing, no written settlement agreement was drafted, and no other documents were submitted.).

Based on the briefings and the evidence included in the filings, it does not appear that the Panel granted Mutual an opportunity to present arguments or evidence on the topic of expungement. While this Court is not willing to require a FINRA arbitration panel to hold a hearing for every expungement proceeding unless FINRA rules so require, this Court does think that Mutual was entitled to an opportunity to present arguments and evidence to support its position. Because the Panel does not appear to have given Mutual such an opportunity, its decision to deny expungement was not rational.

## IV.   CONCLUSION

For the foregoing reasons, Mutual's Petition to Vacate the Arbitration Award as to the denial of expungement is **GRANTED** and the matter is **REMANDED** to the Arbitration Panel for a hearing on the topic.